STATE OF MAINE  SUPERIOR COURT
CUMBERLAND, ss. CIVIL ACTION
DOCKET NO: CV-03-417

TEH -cum. 5|15|06

BEE LOAD LIMITED,

Plaintiff

v. ORDER ON DEFENDANT'S
MOTION TO DISMISS OR STAY
BBC WORLDWIDE LTD,

Defendant


This matter is before the Court on the motion of the defendant BBC

Worldwide Limited ("BBCW") to dismiss plaintiff Bee Load, Ltd.'s ("Bee

Load") amended complaint, or for a stay of proceedings in this court ("Maine

Action") pending resolution of BBCW's claims before the High Court in

England ("British Action").

## BACKGROUND

On July 22, 2003, Bee Load filed a complaint against BBCW in the

Maine Action alleging breaches of contracts, fraud, conversion and negligent

misrepresentation, and seeking an injunction, imposition of a constructive

trust, damages, and a declaratory judgment. The court later granted Bee

Load's motion to amend the complaint to add a count for breach of fiduciary

1

duty. *Bee Load, Ltd. v. British Broadcasting Company Worldwide, Ltd.,*
2005 Me. Super. LEXIS 118 (Sept. 20, 2005).

As has been amply noted in prior orders by this and other courts, the Maine Action arises out of agreements for the licensing and distribution of recordings from the radio archives of the BBC. Although the amended complaint refers to three agreements — Masterrights, Led Zeppelin and Archangel — it does not expressly assert any claims under the Masterrights Agreement.

On October 2, 2003, BBCW moved to dismiss the amended complaint on the grounds of *forum non conveniens*, arguing, *inter alia*, that Bee Load's claims were, in fact, founded upon the Masterrights Agreement and that the High Court was the exclusive forum for resolving those claims. Bee Load countered that Masterrights was not part of the Maine Action. The court denied BBCW's motion concluding that, after balancing the relevant private and public interest factors, dismissal was not strongly favored. *Bee Load, Limited v. British Broadcasting Company Worldwide, Limited,* PORSC-CV-2004-03417 (Me. Super. Ct., Cumb. Cty., January 28, 2004).

On March 30, 2004, BBCW brought a second motion to dismiss, pursuant to M.R. Civ. P. 12 (b)(6), directed to Bee Load's claims for breach of the Led Zeppelin Agreement, for conversion of royalties due Bee Load

2

under that agreement, and for declaratory judgment relating to Bee Load's rights under the Masterrights or Led Zeppelin Agreements. BBCW also moved for reconsideration of the denial of its first motion. The court denied the second motion and concluded that, "*examining the complaint in the light most favorable to the plaintiff*, the forum selection clause in the Masterrights Agreement" did not deprive the Maine court of jurisdiction. *Bee Load, Ltd. v. British Broadcasting Company Worldwide, Ltd.*, PORSC-CV 2004-03417 (Me. Super. Ct., Cumb. Cty., August 2, 2004.)

On November 18, 2005, BBCW commenced the British Action against Bee Load seeking a declaratory judgment regarding construction of the Masterrights, Led Zeppelin, and Archangel Agreements. In that action, the High Court is asked to construe the meaning and status of the three agreements and the parties' rights under each, all of which are concededly governed by the laws of England.

On December 2, 2005, Bee Load petitioned the Maine court for a temporary restraining order to stay the British Action. This court denied the petition, stating that "any claim preclusion that may result from an earlier decision by the High Court [would not] usurp this court's jurisdiction.... A parallel proceeding in the High Court that yields an interpretation of the Masterrights Agreement could aid this court in resolving the parties'

3

dispute." *Bee Load, Ltd v. British Broadcasting Company Worldwide, Ltd.*, 2005 Me. Super. LEXIS 191 (Dec. 6, 2005).

On January 12, 2006 BBCW filed a motion for summary judgment in the British Action. On February 7, 2006, Bee Load petitioned the High Court to stay the British Action "on case management grounds",[1] arguing that the Maine Action was ripe for trial and would likely resolve many if not all of the issues presented in the British Action. On March 3, 2006, the High Court denied Bee Load's request for a stay indicating that disputes arising out of any or all of the three agreements are subject to its exclusive jurisdiction.

> There is no doubt as to the exclusive jurisdiction in the Masterrights Agreement. To my mind, it is clear also the Led Zeppelin Agreement is a variation of the Masterrights Agreement in relation to Led Zeppelin recordings and is therefore subject to the same exclusive jurisdiction clause. Equally, the Archangel Agreement has a clear law and jurisdiction clause, albeit not expressed in exclusive jurisdiction terms. Under Article 23 of the [European Union] Regulation, the jurisdiction is exclusive in such circumstances, unless the parties have agreed otherwise, which they have not.

Judgment, ¶ 27, *BBC Worldwide and Beeload Ltd.*, High Court Queen's Bench Division, Case No. 2005/954, March 3, 2006 (Cooke, J.).

---

[1] The High Court concluded that Bee Load's motion was "in truth, a jurisdictional challenge put forward under the guise of case management issues ...." Judgment, ¶ 31, *BBC Worldwide and Beeload Ltd.*, High Court Queen's Bench Division, Case No. 2005/954, March 3, 2006 (Cooke, J.).

4

On March 6, 2006, the eve of oral arguments before the High Court on BBCW's motion for summary judgment, Bee Load filed for Chapter 11 protection in the Bankruptcy Court for the District of Maine. *See In Re: BeeLoad Ltd.* (Bankr. D. Me., 2006). As a result, an automatic stay under the Bankruptcy Code went into effect. Pursuant to the parties' agreement, the Bankruptcy Court lifted the automatic stay as to the Maine Action, permitting both parties to proceed here. However, there was no agreement as to the British Action, and the Bankruptcy Court denied BBCW's petition for relief from the stay to proceed there. *In Re: BeeLoad Ltd.*, slip op. at 1 (March 16, 2006). An appeal of that decision is now pending before the United States District Court for the District of Maine. *BBC Worldwide, Ltd. v. Bee Load, Ltd.*, 2006 U.S. Dist. LEXIS 20604 (D. Me., April 10, 2006).[2]

On March 24, 2006, BBCW filed its third motion to dismiss in the Maine Action, which is the subject of this Order. BBCW argues (1) that the High Court's recent decision precludes Bee Load from seeking relief in this forum ("Claim Preclusion Argument"), (2) that Bee Load should be estopped from asserting any claims or damages arising out of the Masterrights Agreement ("Judicial Estoppel Argument"), and (3) that, based on changed

---

[2] At hearing on the instant motion, the parties informed this court that BBCW also filed a motion to dismiss Bee Load's bankruptcy case. On March 11, 2006, the Bankruptcy Court heard arguments on the motion and it is now under advisement by the court.

5

circumstances, this court should reconsider its earlier rulings declining to dismiss the Maine Action on grounds of *forum non conveniens* ("Reconsideration Argument"). In the alternative, BBCW urges the court to stay these proceedings arguing that the enforceability of any judgment in the Maine Action may be in doubt.

I. Motion to Dismiss

A. Claim Preclusion

Contrary to BBCW's assertions, this court does not view the High Court's recent decision as foreclosing Bee Load from requesting relief under the Archangel and Led Zeppelin Agreements in the Maine Action. The thrust of the High Court's pronouncement was not that this court lacks jurisdiction over Bee Load's claims. Rather, it was a firm denial of Bee Load's request that the High Court relinquish jurisdiction over BBCW's claims in the British Action. The High Court made clear that, according to the terms of the three agreements, as interpreted under English law, it was the exclusive forum for hearing the dispute pending before it. *See id.* Understandably, it seemed incredible to the High Court that Bee Load would request that it relinquish jurisdiction under such circumstances. *See id.,* ¶ 33.

The High Court's reasoning is irrefutable. There is no doubt that it is appropriate for the British Action to continue before that court. However, in

6

view of the current posture of the Maine Action, the High Court's sound reasoning does not foreclose continuation of the action pending in this court. Bee Load's right to present its claims here has already been litigated and determined. BBCW's arguments to the contrary cannot undo what has already been decided.

This court has not been presented with a challenge based on improper venue.[3] *See* M.R. Civ. P. 12(b)(3). The time to do so has expired and is deemed waived. *See* M.R. Civ. P. 12 (g) and (h). This court is mindful that Maine's Law Court has not had occasion to rule on the proper procedure for seeking dismissal of an action based on an agreement's choice-of-forum clause. Although the First Circuit has determined that the appropriate vehicle is a motion to dismiss for failure to state a claim, pursuant to M.R. Civ. P. 12(b)(6), this court finds more persuasive the majority rule of the federal courts that favor a motion to dismiss for improper venue, pursuant to M.R. Civ. P. 12(b)(3).[4] *See Lipcon v. Underwriters at Lloyd's. London*, 148 F.3d 1285, 1290 (11th Cir. 1998); *Richards v. Lloyd's of London*, 135 F.3d 1289,

---

[3] In its second motion to dismiss, made pursuant to M.R. Civ. P. 12(b)(6), BBCW challenged this court's jurisdiction to decide claims directed to the Led Zeppelin Agreement.

[4] The text of FRCP 12(b)(3) is the same as the text of M.R. Civ. P. 12(b)(3).

1292 (9th Cir. 1998); *Longwall-Associates, Inc. v. Wolfgang Reinfalk GmbH*, 2001 U.S. Dist. LEXIS 8113, * 6 (W.D.Va., June 12, 2001).

Even if this court were to adopt the First Circuit's analysis and permit a challenge pursuant to Rule 12(b)(6) in this circumstance,[5] the result would be the same.[6] *See LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp.*, 739 F.2d 4, 6 (1st Cir. 1984). The First Circuit considers forum selection clauses to be

> merely ... a stipulation in which the parties join in asking the court to give effect to their agreement by declining to exercise its jurisdiction. [] There will always be open to either party the opportunity to present whatever evidence will move a court in the particular circumstances not to decline to exercise its undoubted jurisdiction.

*Id.* The posture of the Maine Action militates against this court abrogating its jurisdiction. *See id.*

The High Court's determination that the Led Zeppelin Agreement is subject to Masterrights' exclusive forum-selection clause compels this court to reconsider its earlier denial of BBCW's second motion to dismiss.

---

[5] 12(b)(6) motions, unlike 12(b)(3) motions, may be made at any point in the proceedings.

[6] Nor is the result different under English procedural rules. CPR Parts 58.7(1) and (2) require an application disputing a Commercial Court's jurisdiction to be made within 28 days after the filing of an acknowledgement of service. This court understands the English rule to apply to an argument that the court should refrain from exercising jurisdiction due to a contractual forum-selection clause.

However, in doing so, this court is mindful that decisions rendered in the context of jurisdictional issues, rather than on the merits, are entitled to full, binding effect. The determination in the Maine Action regarding the Led Zeppelin Agreement was such a decision, and, at least from this court's perspective, has full, binding effect. *See* RESTATEMENT (SECOND) JUDGMENTS § 17 ("a judgment in favor of either the plaintiff or the defendant is conclusive in a subsequent action between them on the same or a different claim, with respect to any issue actually litigated and determined.") This is true, moreover, whether the decision was correct or incorrect. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 106 ("A judgment will be recognized and enforced in other states even though an error of fact or of law was made in the proceedings before judgment."); RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES, cmt. c. ("a foreign judgment is generally entitled to recognition by courts in the United States to the same extent as a judgment of a court of one State in the courts of another State.").

Accordingly, while this court accords great deference to the High Court's construction and application of English law, it does not consider that the High Court's decision has stripped this court of jurisdiction over Bee Load's claims under the Archangel or Led Zeppelin Agreements in the Maine Action.

9

B.    Judicial Estoppel

BBCW has consistently maintained that the forum selection clause of the Masterrights Agreement vests exclusive jurisdiction in the High Court; that the Masterrights, Led Zeppelin and Archangel Agreements are intertwined; and that deciding claims under the Led Zeppelin and Archangel Agreements cannot be done without also construing the Masterrights Agreement.  Conversely, BBCW urges this court to find that Bee Load has been inconsistent and has changed positions regarding the role of the Masterrights Agreement in the Maine Action — first, arguing that it was not seeking relief under Masterrights, and then asserting that it was.

On its face, Bee Load's claims in the amended complaint in the Maine Action are based on breaches and damages relating to the Led Zeppelin and Archangel Agreements, not Masterrights.[7]  Further, Bee Load's declaratory judgment claim seeks a determination of the parties' rights and obligations under Archangel.  In this regard, there are two significant features of the Archangel Agreement:  first, Bee Load's contributions under the agreement expressly include its benefits under the Masterrights Agreement; and, second,

_____

[7] Rightly or wrongly, in its order on BBCW's second motion to dismiss, this court earlier determined that the exclusive forum selection clause in Masterrights did not apply to Led Zeppelin or Archangel.  In fact, both parties acknowledged that Archangel's forum selection clause was permissive.  The second motion was made pursuant to Rule 12(b)(6) and the court's decision was made after "examining the complaint in the light most favorable to the plaintiff."

10

Archangel "sets aside ... the Masterrights Agreement, the rights in which have now been assigned to Archangel for the Term of this [Archangel] Agreement only." Thus, this court has understood that there was a period of time in which the terms of the Masterrights Agreement, including its forum-selection clause, were set aside by the Archangel Agreement, and that Bee Load's benefits under the former agreement were incorporated into the later. Thus, it seems apparent on the face of the complaint that aspects of the Masterrights Agreement must be construed in the Maine Action in order to understand what Bee Load has contributed to the Archangel Agreement. In turn, that understanding is relevant to a determination of whether Archangel has been breached and, if so, what damages flow from that breach.

Bee Load's recent arguments before this court, the High Court, and the Bankruptcy Court, that the relief sought by BBCW in the British Action is the same as the relief sought by Bee Load in the Maine Action, do not appear to be a change of position. In the British Action, BBCW has styled its claims before the High Court as declaratory judgments involving the efficacy and meaning of the Masterrights Agreement. These would apparently be governed by Masterrights' exclusive forum-selection clause, except for the fact that, under the Archangel Agreement, there is a period of time during which the terms of the Masterrights Agreement are set aside in

favor of Archangel's terms. Nor does the fact that Bee Load may seek damages for breaches of Archangel, calculated according to a formula contained in Masterrights, signal a change. The terms of the two agreements anticipate this happening, and Bee Load did not represent otherwise to the court. Accordingly, judicial estoppel is inapplicable in this case.

C.    Reconsideration of *forum non conveniens*

BBCW also argues that changed circumstances necessitate reconsideration of its original *forum non conveniens* argument, including: (1) Bee Load's change of position with regard to claims arising under the Masterrights Agreement, (2) this court's finding that parallel proceedings in the British Action are appropriate, (3) the High Court's finding that Bee Load has deceived and misled this Court with respect to the Masterrights Agreement, (4) the High Court's findings that the Led Zeppelin and Archangel Agreements are both subject to the exclusive jurisdiction of the High Court, (5) Bee Load's recent concession that English law governs Bee Load's claims, and (6) Bee Load's recent bankruptcy filing, which BBCW asserts is intended to shut down proceedings before the High Court.

With respect to points (1) and (3), as explained in Part I.B., above, this court cannot conclude that Bee Load has changed its position in the Maine Action. Likewise, with respect to point (4), the court has substantively

12

addressed the effect of the High Court's declaration on this court's jurisdiction in Part I.A., above. Nor, with regard to point (2), should it be inferred from this court's opinion denying Bee Load's motion for a TRO that this court intended to relinquish its own jurisdiction of the parties' dispute. With regard to point (5), Bee Load's recent concession that English law applies to its claims does not affect the *forum non conveniens* analysis. In its January 28, 2004 order, the court stated, "[E]ven if England's laws were to apply to all of [Bee Load's] claims... BBCW has not established that applying England's laws would be demonstrably difficult for this court." *Bee Load, Limited v. British Broadcasting Company Worldwide, Limited,* PORSC-CV-2004-03417 (Me. Super. Ct., Cumb. Cty., January 28, 2004).

Finally, with regard to point (6), just as this court declined to infer bad faith from BBCW's actions in filing a declaratory judgment in the High Court, the court declines to infer bad faith in Bee Load's voluntary bankruptcy filing. To be sure, Bee Load filed its petition on the eve of oral arguments on summary judgment in the British Action, which ultimately led to a stay proceedings in that forum. However, the possibility, among other possibilities, that this was a tactical decision does not alter its legality. Moreover, the Bankruptcy Code provides a remedy, where appropriate, for the effects of the automatic stay, which BBCW has pursued and which is still

13

in play on appeal. *See* 11 U.S.C. § 362(d). In sum, neither Bee Load's election to file for bankruptcy, nor the fact that BBCW did not prevail on its petition before the Bankruptcy Court for relief from stay constitute changed circumstances affecting BBCW's original argument for dismissal under *forum non conveniens*.

Accordingly, after reconsideration, the court declines to grant BBCW's renewed motion to dismiss on the grounds of *forum non conveniens*.

## II. Stay of Proceedings

Finally, BBCW argues that this court should exercise its discretion to stay proceedings in the Maine Action pending a resolution of its claims before the High Court. Its argument is compelling. As noted, the High Court has been asked to construe the three agreements in issue here, constructions that must be based on English law. This court's earlier observation in its order on Bee Load's motion for a TRO retains its full vitality.

> [I]n the particular context of this case, a central concern is the interpretation of a contract, known to the parties as the Masterrights Agreement, which both parties concede must be interpreted according to English law. To this end, a parallel proceeding in the High Court that yields an interpretation of the Masterrights Agreement could aid this court in resolving the parties' dispute.

*Bee Load, Ltd. v. British Broadcasting Company Worldwide Ltd.*, PORSC-CV-2004-03417 (Me. Super. Ct., Cumb. Cty., December 6, 2005). These

words do not express an intent by this court to abdicate or refuse jurisdiction over this dispute simply because it is governed by English law. Rather, they are a recognition of the High Court's superior ability to interpret its own law, and the likely benefit to this court of interpretive guidance from the High Court.

In opposition, Bee Load renews its earlier argument that a decision to stay the Maine proceedings in favor of a resolution before the High Court would sound the death knell of the Maine Action because Bee Load does not have the financial resources to defend its position before the High Court. While, if true, that fact would certainly weigh heavily against granting a stay, this court is unable to fairly evaluate Bee Load's financial condition on the record before it. However, the U.S. District Court is. This court understands that Bee Load has submitted to the Bankruptcy Court information regarding its financial condition and the cost of litigation in the High Court. This court also understands that BBCW's appeal pending before the District Court will include an evaluation of the practical implications of lifting or continuing the automatic stay, such as, whether Bee Load would be financially capable of defending its interests in the High Court. *See BBC Worldwide, Ltd. v. Bee Load Limited*, 2006 U.S. Dist. LEXIS 20604 (D. Me., April 10, 2006).

15

If the automatic stay is lifted, the High Court has already indicated that it can render a decision on summary judgment that would be helpful to this court, and that it would be able to do so within a short period of time. *See* Judgment, ¶ 30, *BBC Worldwide and Beeload Ltd.*, High Court Queen's Bench Division, Case No. 2005/954, March 3, 2006 (Cooke, J.) ("If the English action is allowed to proceed, there will be a Summary Judgment Application heard very shortly, which may be (and, in my judgment is, having examined it) likely to determine ... essential contractual construction issues."); *see also Id.* at ¶ 22. This is a significant consideration.

Another significant consideration is the three-year pendency of the Maine Action and the fact that it is ready for trial.[8] However, after carefully weighing those concerns and the interests of the parties, the court is satisfied that justice will be promoted by a temporary stay of the Maine proceedings pending a decision by the District Court on BBCW's appeal. *See Cutler Associates, Inc. v. Merrill Trust Co.*, 395 A.2d 453, 456 (Me. 1978).

---

[8] This case is ready for trial and is first on the court's current trial list, which began May 1, 2006. However, it is now uncertain when it can be reached for trial. In September 2002, Maine's Supreme Judicial Court, concerned with the State's significant lack of judicial resources, prioritized the various case types. The purpose of that prioritization was to assure that, if there were not enough resources to timely resolve all cases in the system, high-priority case types (e.g., family matters; criminal cases; etc.) would be handled first. The Maine Action is not a designated high-priority case type. In April 2006, the single justice assigned to the Maine Action was temporarily assigned to other matters having a higher priority designation.

16

The outcome of that appeal will determine whether the parties can timely proceed to a decision on the pending motion for summary judgment in the British Action. Accordingly, the Maine Action shall be temporarily stayed and, within five days of the entry of a decision the District Court, the parties are each directed to report that decision to this court. Thereafter, this court shall determine whether the temporary stay should be terminated or extended.

Pursuant to M. R. Civ. P. 79(a), the Clerk is directed to enter this Order on the Civil Docket by a notation incorporating it by reference and the entry is

Defendant's motion to dismiss Plaintiff's amended complaint or, in the alternative, for reconsideration is DENIED; and

Defendant's motion to stay proceedings is GRANTED, as follows:

(a) This case shall be stayed, temporarily, pending resolution of Defendant's appeal to the U.S. District Court in *BBC Worldwide, Ltd. v. Bee Load, Ltd.*, 2006 U.S. Dist. LEXIS 20604 (D. Me., April 10, 2006); and

(b) Within five (5) days after the entry by the U.S. District Court of a decision on such appeal, the parties are each directed to report that decision to this court in writing, and this court shall thereupon schedule a hearing to determine whether this court's temporary stay should be terminated or extended.

Dated: May 15, 2006

_____
Justice, Superior Court

17

Plaintiff's Counsel:

Paul McDonald Esq
P O Box 9729
Portland Me 04106


Defendants Counsel:

Mark Porada Esq
One Monument Square
Portland Me 04101